UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NANCY MAHAN,
    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,
    Defendant.

Case No. 13-cv-04803-VC

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING CLAIM AS UNRIPE**

Re: Dkt. No. 112, 125

Introduction

Nancy Mahan has a long term disability policy through her former employer. The policy is provided and administered by Unum Life Insurance Company. Mahan contends that Unum has been not paying her full benefits and seeks to recover the unpaid benefits under Section 502(a)(1) of ERISA. She also seeks a declaration regarding the relationship between the plan and her worker's compensation proceeds. Mahan has moved for judgment as a matter of law under Rule 52. Unum has moved for summary judgment under Rule 56, or in the alternative for judgment under Rule 52. Unum's motion for summary judgment is granted with respect to the claim for benefits, because, on the undisputed facts, she filed her suit too late. The claim for declaratory relief is dismissed as unripe.

Background

Nancy Mahan worked for Williams Sonoma as an accountant. In May 2005, she hurt her back, but continued working. Shortly after hurting her back, Mahan elected to "buy up" her coverage under the Unum disability policy. Before she bought up, the plan entitled Mahan to receive 40% of her gross monthly income if she became disabled. The buy-up entitled her to receive 60% of her gross monthly income while disabled. The buy-up became effective July 1, 2005.

By September 2005, Mahan could no longer work because of her back injury, so she left work and filed a disability claim. She returned to work part-time in December 2005, but remained "disabled" within the meaning of the plan. Unum approved Mahan's claim for disability benefits, and has been paying her under the disability policy ever since.

From the start, Mahan contended that her benefits should have equaled 60% of her gross monthly income because she'd elected to buy up her coverage. Unum rejected this contention because Mahan had hurt her back before buying up, and the disability plan made clear that any increase in coverage would not apply to a preexisting injury. Thus, Mahan's disability payments were (and still are) 40% of the gross monthly income she was receiving at the time she became disabled.

In June 2008 (roughly two years after she first hurt her back), Mahan fell and broke her ankle. The injury required surgery, and she temporarily ceased her part-time work at Williams Sonoma. Mahan went back to work part time in August 2008 (roughly eight weeks after the ankle injury), but continued receiving disability benefits under the plan for her back injury. Then, in September 2008, Williams Sonoma laid her off.

During the 2008-2009 period, Mahan informed Unum of her ankle injury as part of her effort to continue receiving disability payments. On August 5, 2008, after some phone conversations, Unum informed Mahan in writing that Mahan would need to submit a "Claimant's Supplemental Statement form" in support of her claim for "continuing disability." "This proof," UNUM stated, "must be received within 45 days . . . ." Unum started receiving information from Mahan's doctors, and finally on January 22, 2009, Mahan submitted her "Supplemental Statement" form. In this form, Mahan cited her back injury and her ankle injury as reasons she couldn't work and needed to continue receiving disability payments. Unum approved her claim for continuing disability benefits.

Meanwhile, however, Mahan continued to wage her multi-year battle with Unum over the buy-up issue, arguing that her May 2005 back injury entitled her to benefits at the 60% level because she'd elected to buy up her coverage as of July 1, 2005. By 2010, she'd enlisted a lawyer, to represent her in pursuit of this argument. The assertion by Mahan and her lawyer that the back

2

injury entitled Mahan to 60% coverage was clearly wrong, because the plan unambiguously precluded her from receiving the benefit of the buy-up when disabled by an condition that existed before the buy-up. The more interesting question is whether Mahan should have received 60% coverage when she remained out on disability after injuring her ankle in 2008. But Mahan and her lawyer did not make that argument to Unum during the administrative proceedings. Nor did Unum take it upon itself to consider the question.

Instead, Unum issued a letter to Mahan's lawyer on September 23, 2010, rejecting the claim that Mahan was entitled to the 60% coverage (but agreeing she should still be paid at the 40% level). The letter stated that Mahan had the right to file an administrative appeal, that she had 180 days to do so, and that she could sue under ERISA if she disagreed with the decision on appeal.

Mahan took her full 180 days, but finally filed an appeal on March 22, 2011. She continued to argue that she should have received 60% coverage for her back injury, but did not raise the question whether coverage should have increased to 60% following her 2008 claim for continued disability in the wake of her ankle injury.

On July 15, 2011, in a letter to Mahan's lawyer, Unum denied the appeal. It did so for the reason it had been rejecting Mahan's arguments all along – the back injury was a condition that existed before Mahan bought up her coverage. The letter stated: "If your client disagrees with this decision, you have a right to bring a civil suit" under ERISA.

Instead of filing a lawsuit, Mahan's lawyer sent Unum a letter. He sent this letter on September 25, 2012 – more than 14 months after Unum had rejected Mahan's appeal. In the letter, Mahan's lawyer asserted that "there is another reason, separate and independent from those addressed in the appeal, that provides a compelling basis for Unum's claim department to reconsider its decision." The reason, Mahan's lawyer asserted, was that Mahan should have received 60% coverage in the wake of her 2008 claim for continuing disability benefits, which was based at least in part on her ankle injury.

Unum responded on February 11, 2013. It stated: "With respect to your request of September 25, 2012, that Unum consider paying Ms. Mahan at a higher benefit level as a result of

3

a new disabling condition that is not subject to the pre-existing condition exclusion, we must decline your request." Unum's reasoning was that if a claimant goes out on disability, and later buys up coverage, the claimant can "never" benefit from the buy-up so long as the claimant remains out on disability. In other words, according to Unum, even if a claimant suffers one injury, then pays for increased coverage while working part time after that injury, and then suffers a new injury that causes the claimant to *remain* disabled, the increased coverage can "never" kick in.

Mahan filed this ERISA suit on October 16, 2013.

Discussion

The conclusion by Unum described in the preceding paragraph seems unreasonable. As discussed at length during the hearing on this motion, if Mahan's ankle injury was independently disabling and therefore required her to remain on disability, no language in the plan would have precluded her from receiving the "buy-up" coverage she'd begun paying for two years earlier. It may well be that Mahan's ankle injury wasn't independently disabling, and it may even be that the ankle injury was caused by the back injury, which would make it a preexisting condition that doesn't qualify for enhanced coverage. But Unum didn't consider these questions, because it somehow interpreted the plan as categorically barring any employee who is forced to remain on disability because of a new injury from receiving enhanced coverage, even if Unum had been receiving the employee's payments for that enhanced coverage.

Moreover, even though Mahan never argued during the administrative process that she should have received 60% coverage in the wake of her 2008 ankle injury (as opposed to when she initially became disabled because of her back), Unum arguably had an obligation, as Mahan's fiduciary, to consider that question on its own when it received Mahan's claim for continuing disability coverage.

But for purposes of this case, these questions don't need to be reached. Even if Unum had a fiduciary obligation to consider this question on its own, and even if consideration of that question would have resulted in increased coverage, Mahan is barred from suing on the issue because she filed her lawsuit too late. If Mahan had a claim based on the failure to increase her

4

coverage in the wake of her ankle injury, she would have needed to sue by September 19, 2011, or at the latest January 22, 2012.  But she did not sue until October 16, 2013.

The disability plan contains a contractual limitations period which states that a claimant must sue within three years of the date her proof of claim was due.  Mahan's claim in the wake of her ankle injury was for "continuing disability," and in that scenario the plan requires the claimant to submit proof "within 45 days of a request" by Unum.  *Cf. Mogck v. Unum Life Ins. Co. of Am.*, 292 F.3d 1025 (9th Cir. 2002) (performing similar analysis in case involving similar contractual limitation period for continuing disability).  As discussed in the preceding section, Unum requested this proof on August 5, 2008, so Mahan was arguably required to submit it by September 19, 2008.  Therefore, Mahan was arguably required to file suit by no later than September 19, 2011.  But she didn't sue until October 16, 2013.

At the hearing on this motion, Mahan's lawyer noted that even though Unum told Mahan to submit proof within 45 days of Unum's request, she didn't actually finish submitting the proof until January 22, 2009, which was 170 days after Unum's request.  Mahan's lawyer argued at the hearing that because Unum accepted that submission, the three-year clock did not start running until January 22, 2009.  Assuming that is correct, the contractual limitation period would have required Mahan to sue by January 22, 2012.  But again, she didn't sue until October 16, 2013.

To get around this limitations problem, Mahan argues that Unum should be barred from asserting the contractual limitations provision based its conduct during the administrative process.  She invokes *LaMantia v. Voluntary Plan Administrators, Inc.*, 401 F.3d 1114, 1119 (9th Cir. 2005), which applied the doctrine of equitable estoppel to bar an ERISA defendant from asserting a limitations defense where the defendant had caused the claimant to believe that her time to sue had not expired.  But this case is quite different from *LaMantia*.  In that case, the defendant told the claimant that it was continuing to consider her appeal, as the end of the limitations period was approaching and even after the limitations period expired.  *Id*. at 1120.  Therefore, the claimant relied to her detriment on affirmative statements by the defendant which led her to believe the limitations period would not apply.  That is the essence of estoppel: "the party to be estopped must have acted so that the other party had a right to believe that the party intended its conduct to be

5

acted upon; and . . . the other party relied on the conduct to its prejudice." *Id.* at 1119 (internal quotation omitted). That didn't happen here. Unum rejected Mahan's appeal before the contractual limitations period expired. If Mahan is correct that the limitations clock did not start running until January 22, 2009 (when she submitted proof in support of her claim for continuing disability), this means she had until January 22, 2012 to sue, which is more than 6 months after Unum denied her appeal. If instead the limitations clock started running on September 19, 2008 (45 days after Unum requested proof of her claim), Mahan still had until September 19, 2011 to sue, which is 66 days after Unum denied her appeal. And Unum never said anything to Mahan's lawyer that could reasonably have caused him to believe that the contractual limitations period would not apply. All Unum said was that Mahan had the right to file an ERISA suit if she disagreed with the decision on appeal. It would be different if Unum told Mahan she could sue after the appeal was decided and then didn't decide the appeal until after the limitations period had run. Here, although Mahan did not have a lot of time to file suit following Unum's denial of her appeal, she has provided no evidence and made no argument to suggest she could not have met this deadline, or that Unum misled her into thinking she didn't need to meet the deadline. Nor was Mahan particularly diligent in pursuing an administrative remedy; had she been more diligent, there would have been even more time on the clock when Unum denied her appeal. *Cf. Heimesoff v. Hartford Life & Acc. Ins. Co.*, 134 S.Ct. 604, 614-15 (2013) (discussing cases in which it was the claimant's fault for not pursuing administrative remedies diligently and/or not suing on time).

Accordingly, any claim Mahan may have about Unum's failure to consider her eligibility for increased coverage based on the ankle injury is barred by the contractual limitations period.

Mahan also seeks an order declaring that Unum may not offset any money Mahan receives from her worker's compensation settlement for future medical treatment and expenses. Mahan has not submitted any evidence that Unum has been offsetting this money or intends to do so. This issue is therefore not ripe for adjudication, and the claim for declaratory relief is dismissed.

Conclusion

Unum's motion for summary judgment with respect to the claim for benefits is granted. The claim for declaratory relief is dismissed as unripe.

1
2   **IT IS SO ORDERED.**
3   Dated: June 24, 2015

4   _____
    VINCE CHHABRIA
5   United States District Judge

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28